**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47459**

| | |
|---|---|
| THOMAS BUCK CHAPUT, | ) |
| | ) **Filed: March 10, 2021** |
| Petitioner-Appellant, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| STATE OF IDAHO, | ) |
| | ) |
| Respondent. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Eric J. Wildman, District Judge.

Judgment summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Thomas Buck Chaput appeals from the district court's summary dismissal of his petition for post-conviction relief. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In Chaput's underlying criminal case, he pled guilty to grand theft. According to the terms of the parties' plea agreement, the State agreed to recommend a unified sentence of ten years with five years determinate to run concurrently with Chaput's prior sentence of ten years determinate for aggravated assault on a law enforcement officer. At the change of plea hearing, Chaput made the following statements about his plea agreement:

> [Court]: Do you feel that anyone has forced or threatened you in any way to plead guilty today?
> [Chaput]: No, Your Honor.

1

[Court]:     Has anyone made you any promises in exchange for your plea of guilty other than what was in the plea agreement that we just discussed?

[Chaput]:   No, Your Honor.

[Court]:     All right.  Do you understand the only person that can promise you what sentence you'll receive is the judge?

[Chaput]:   Yes, Your Honor.

Thereafter, the district court held a sentencing hearing.  Because the grand theft conviction, among other things, violated Chaput's probation in the aggravated assault case, the court held a combined sentencing hearing addressing the sentences in both cases.  At that hearing, the court followed the State's recommendation in the grand theft case and sentenced Chaput to a unified sentence of ten years with five years determinate to run concurrently with Chaput's aggravated assault sentence.  The court also executed the sentence in the aggravated assault case but modified it to a unified sentence of ten years with five years determinate. Chaput appealed these sentences, and this Court affirmed.  *State v. Chaput*, Docket Nos. 46747 and 46826 (Ct. App. Dec. 17, 2019) (unpublished).

During the pendency of Chaput's sentencing appeal, he filed a pro se petition for post-conviction relief challenging his conviction for grand theft and alleging ineffective assistance of trial counsel.  Chaput filed a supporting affidavit, which the district court construed to allege that Chaput's counsel was ineffective for (1) failing to timely provide the State's discovery responses to Chaput, (2) lying to him in an effort to get him to waive the preliminary hearing, (3) misrepresenting that if he pled guilty he would be sentenced to a rider or at most receive a two-year fixed sentence, and (4) lying to him about not being able to apply to mental health court.  Chaput also filed a motion for the appointment of post-conviction counsel.

The district court entered a notice of intent to dismiss Chaput's post-conviction petition. In this notice, the district court took "judicial notice of the registrar of actions and content of the files in [the grand theft case] and [the aggravated assault case]."  The district court found Chaput's claim that his counsel purportedly misrepresented the sentence Chaput would receive if he pled guilty to be frivolous and unsupported by the record.  Further, the court found that each of Chaput's other claims failed to allege any facts providing a reasonable probability of a different outcome and to identify any potential prejudice.

In response to the district court's notice of intent to dismiss his petition, Chaput filed an unsworn statement and submitted numerous documents, including a letter to the court about his

aggravated assault conviction, correspondence with the Idaho State Bar about his trial counsel's performance, and correspondence from his trial counsel. Chaput's response did not challenge or otherwise mention the court's judicial notice of the underlying case or of the aggravated assault case.

After receiving Chaput's response, the district court entered an order summarily dismissing his petition, stating the response "rehashes the arguments raised in the [petition] without providing any substantive information pertaining to the deficiencies identified" in the court's notice of intent to dismiss. Additionally, the court denied Chaput's request for appointment of counsel, concluding that his "claims are frivolous and without merit." Chaput timely appeals.

## II.

## ANALYSIS

### A. Judicial Notice

Chaput asserts the district court erred by taking judicial notice of "the entire record" in his underlying grand theft case and in his prior aggravated assault case.[1] A court's decision to take judicial notice under Idaho Rule of Evidence 201 is an evidentiary ruling, which we review for an abuse of discretion. *Rome v. State*, 164 Idaho 407, 413, 431 P.3d 242, 248 (2018). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

Rule 201 is limited to judicial notice of adjudicative facts not subject to reasonable dispute. I.R.E. 201(a), (b). A court may sua sponte take judicial notice on its own. I.R.E. 201(c). "When a court takes judicial notice of records, exhibits, or transcripts from the court file in the same or a separate case, the court must identify the specific documents or items

---

[1] Chaput failed to include this issue in his statement of issues as required by Idaho Appellate Rule 35(a)(4). Generally, such a failure eliminates the issue from consideration on appeal. *Kugler v. Drown*, 119 Idaho 687, 691, 809 P.2d 1166, 1170 (Ct. App. 1991). However, we address the merits because Chaput provided argument and authority on the issue. *See Everhart v. Washington Cnty. Rd. & Bridge Dep't*, 130 Idaho 273, 274, 939 P.2d 849, 850 (1997) (holding issue not designated on appeal may be considered if briefing addressed authority or argument).

so noticed." I.R.E. 201(c)(2). This rule does not require the court to specifically identify each statement or fact of which it takes notice. *Nicholson v. Bennett*, 166 Idaho 720, 726, 462 P.3d 1184, 1190 (2020). Rather, a court must only identify the items of which it is taking notice. *Id.*

On appeal, Chaput argues the district court abused its discretion by taking judicial notice of the entire record in his criminal cases and violated Rule 201 by failing to identify the specific documents upon which the court relied. The State responds that Chaput failed to preserve this issue for appeal by objecting to the judicial notice. In support, the State cites *McKinney v. State*, 162 Idaho 286, 396 P.3d 1168 (2017). *McKinney* states in dicta in a footnote that the petitioner in that case waived any objection to the district court's failure to specify the documents of which it took judicial notice by not objecting to that notice. *Id.* at 290 n.2, 396 P.3d at 1172 n.2. In reply, Chaput asserts the issue is preserved because the district court actually decided the issue. In support, Chaput cites *State v. Jeske*, 164 Idaho 862, 868, 436 P.3d 683, 689 (2019), which ruled that if the district court decided an issue, then that decision "can form the basis for review."

The language of Rule 201 resolves whether Chaput was required to challenge the district court's judicial notice to preserve that challenge for appeal. Specifically, Rule 201(e) provides that:

> On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party *on request*, is still entitled to be heard.

I.R.E. 201(e) (emphasis added). Interpretation of a court rule always begins with the plain, ordinary meaning of the rule's language tempered by its purpose. *State v. Chambers*, 166 Idaho 837, 842, 465 P.3d 1076, 1081 (2020). The Court construes the Idaho Rules of Evidence "to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of the evidence law, to the end of ascertaining the truth and securing a just determination." *Id.* (quoting I.R.E. 102).

Under the plain language of Rule 201(e), a party challenging the propriety of a court's judicial notice and the nature of the facts the court noticed is required to request to be heard on the matter. Such a request gives the court the opportunity to decide the party's challenge. This decision in turn forms the basis for an appellate review. Absent a request to be heard on a challenge, the party fails to preserve the issue for appeal. *See, e.g., Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988) (addressing identical federal rule and holding that "absent a request under Rule 201(e) for a hearing before the district court, the fact

4

that the court took judicial notice of a fact or the tenor of the notice taken is not grounds for later appeal").

Because Chaput never challenged the district court's judicial notice, he failed to preserve the issue for appeal. Regardless, the error was harmless. Idaho Rule of Civil Procedure 61 provides in relevant part that unless justice requires otherwise, no error in admitting evidence is grounds for vacating, modifying, or otherwise disturbing a judgment or order. "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." *Id.* In this case, the district court's error in failing to specifically identify the documents of which it took judicial notice was harmless for two reasons.

First, the documents upon which the court relied in its notice of intent to dismiss can be easily determined from that notice. Second, Chaput's argument that the error adversely affected his substantial rights because "the district court summarily dismissed [his] claim [based] *solely* upon facts it derived from the underlying case files" is unpersuasive. Contrary to Chaput's assertion, the court's reliance on a few limited documents from Chaput's criminal cases would not have affected his post-conviction case's eventual outcome. Despite the court's error in the manner in which it judicially noticed the records upon which it relied, Chaput could not have avoided indefinitely his in-court, under oath, transcribed acknowledgements during the change of plea hearing that no one made him any promises in exchange for his plea other than in the plea agreement.

## B. Appointment of Counsel

Chaput also asserts the district court erred by dismissing his petition without appointing him counsel. Idaho Code § 19-4904 governs a request for appointment of counsel in a post-conviction proceeding and provides a court-appointed attorney "may be made available" if the petitioner "is unable to pay court costs and expenses of representation." A decision to deny a request for court-appointed counsel is reviewed for an abuse of discretion. *Shackelford v. State*, 160 Idaho 317, 325, 372 P.3d 372, 380 (2016).

The standard for determining whether to appoint counsel for an indigent petitioner is whether the petitioner alleges facts showing the possibility of a valid claim requiring further investigation. *Id*. In determining whether a petitioner raised the possibility of a valid claim, the Court considers "whether the appointment of counsel would have assisted [the petitioner] in conducting an investigation into facts not in the record and whether a reasonable person with

adequate means would have been willing to retain counsel to conduct that further investigation into the claim." *Melton v. State*, 148 Idaho 339, 342, 223 P.3d 281, 285 (2009). In making this determination, every inference must run in the petitioner's favor where the petitioner is unrepresented at the time and cannot be expected to know how to properly allege the necessary facts. *Id.*

Stating a possible claim for ineffective assistance of counsel requires viable allegations under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Id.* To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). Where, as here, the petitioner was convicted upon a guilty plea, to satisfy the prejudice element, the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Plant v. State*, 143 Idaho 758, 762, 152 P.3d 629, 633 (Ct. App. 2006).

On appeal, Chaput combines his allegation of deficient performance in one claim with his assertion of prejudice from another claim in an effort to establish the possibility of a valid claim.[2] Specifically, Chaput argues that his counsel "made a promise about the sentence he would receive"--"a rider, or at worst, two years fixed"--and that he was prejudiced because he would not have pled guilty "if he had seen [the] discovery" which did not "show[] him taking the items from the store."

This Court's decision in *Campos v. State*, 165 Idaho 90, 438 P.3d 787 (Ct. App. 2019), is instructive in determining whether Chaput has alleged the possibility of a valid claim. In that case, Campos filed a petition for post-conviction relief, alleging that his trial counsel was ineffective for "leading him to believe that he would receive a concurrent sentence" and "advising him to simply agree in the positive with what ever [sic] was asked at pleading." *Id.* at 92, 438 P.3d at 789 (quotations and brackets omitted). The State moved to dismiss Campos's

---

[2] Chaput makes no arguments and cites no authorities in support of his other post-conviction claims. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

petition and, after a hearing on the motion, the district court summarily dismissed the petition. *Id.*

On appeal, Campos argued his plea was not knowing, voluntary, and intelligent despite his "numerous assurances" to the district court both in his guilty plea advisory form and during the change of plea hearing that he understood the terms of his plea agreement and that "no other promises were made to him that influenced his decision to plead guilty." *Id.* at 93-94, 438 P.3d 790-91. Further, Campos argued the court was required to conduct an evidentiary hearing because his post-conviction statements were contrary to his statements made when pleading guilty. *Id.* at 94, 438 P.3d at 791. This Court rejected Campos's argument, ruling:

> [T]his is exactly the situation where the appellate courts have held that the post-conviction claims are belied by the record and subject to summary dismissal. Without more, the district court is not . . . required to conduct an evidentiary hearing to determine which of Campos' contrary statements is more credible.

*Id.*

As in *Campos*, Chaput's assertions that "his answers in the plea colloquy were untrue" are inadequate to demonstrate the possibility of a valid claim. Contrary to Chaput's assertion, the district court was not required to evaluate his answers in the plea colloquy "as if they were untrue and coerced by trial counsel." A strong presumption of verity attaches to a defendant's solemn declarations during a plea hearing. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *United States v. Rivera-Ramirez*, 715 F.2d 453, 458 (1983) ("[S]olemn declarations made in open court carry a strong presumption of verity."). Chaput's answers expressly acknowledged under oath that no one had promised him a sentence other than the State's recommendation in the plea agreement and that no one but the court could promise a particular sentence. Under *Campos*, these answers would have required summary dismissal of Chaput's claim that his counsel was ineffective for promising him "a rider, or at worst, two years fixed." For this reason, Chaput did not state the possibility of a claim required for appointment of counsel.

Further, Chaput cites no support for his assertion that the district court was required to evaluate his plea colloquy answers "as if they were untrue and coerced by trial counsel," except *Machibroda v. United States*, 368 U.S. 487 (1962). In that case, Machibroda pled guilty to two

7

counts of robbery and was sentenced to two consecutive sentences of twenty-five years and fifteen years of imprisonment. He filed a motion under 28 U.S.C. § 2255 to vacate his sentence, alleging the prosecutor promised him that "he would receive a total prison sentence of not more than twenty years if he pleaded guilty" and that the district court was "agreeable" to this sentence. *Machibroda*, 368 U.S. at 488-89. Further, Machibroda alleged "when [he] threatened to advise his lawyer and the court" about the prosecutor's promise, the prosecutor "told him that if he insisted on making a scene, certain unsettling matters concerning two other robberies would be added to [Machibroda's] difficulties." *Id.* at 489-90 (internal quotation marks omitted). The Government opposed Machibroda's petition and filed the prosecutor's affidavit in support "emphatically" denying any promises or coercion. *Id.* at 491.

Machibroda appealed after the district court dismissed his petition. The United States Supreme Court reversed this dismissal, ruling that "the District Court did not proceed in conformity with the provisions of 28 U.S.C. § 2255 . . . when it made findings on controverted issues of fact without notice to the petitioner and without a hearing." *Machibroda*, 368 U.S. at 494. The Court noted that "this was not a case where the issues raised by the motion were conclusively determined either by the motion itself or by the files and records in the trial court." *Id.* (internal quotation marks omitted). Further, the Court ruled that "if the allegations contained in [Machibroda's] motion and affidavit are true, he is entitled to have his sentence vacated. A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." *Id.* at 493.

*Machibroda* is distinguishable from this case and, as a result, Chaput's reliance on it is misplaced. Unlike in *Machibroda*, the district court in this case specifically inquired whether anyone had made Chaput any promises about his plea agreement; Chaput responded under oath that no such promises were made and that he understood only the court could promise a sentence; the transcript of this exchange conclusively refutes Chaput's post-conviction allegations; and the court provided Chaput notice of its intent to dismiss his petition. Further, that Chaput's counsel may have offered advice that the court would impose a different sentence is not grounds to conclude Chaput's plea was not knowing, voluntary, and intelligent.[3] *See*

---

[3] Chaput argues the district court's reliance on his guilty plea "is dubious at best" because this Court previously stated that "the district court's inconsistent description of the terms of Chaput's plea agreement and the prosecutor's failure to correct that description call into question

*McMann v. Richardson*, 397 U.S. 759, 770 (1970) ("That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing."); *see also Dunlap v. State*, 141 Idaho 50, 60-61, 106 P.3d 376, 386-87 (2004) (rejecting petitioner's argument that his counsel was ineffective for "fail[ing] to give accurate, informed advice on the consequences of a guilty plea").

Chaput fails to establish he has alleged the possibility of a valid claim that his counsel was ineffective for promising him a rider or, at most, a two-year fixed sentence. Additionally, Chaput's assertion is unpersuasive that this purported deficiency prejudiced him because he would not have pled guilty "if he had seen [the] discovery" which did not "show[] him taking the items from the store." Chaput's claim that he would not have pled guilty based on what the State's discovery showed is not causally connected to his allegation that his counsel promised him a particular sentence. Accordingly, Chaput's appeal also fails for this reason.

## IV.

## CONCLUSION

We hold that Chaput failed to preserve for appeal his challenge to the district court's judicial notice of his criminal records because he did not ask to be heard on the matter as I.R.E. 201(e) requires. Further, we hold that, although the district court erred by taking judicial notice of the entire record in Chaput's criminal cases instead of specifically identifying particular items for judicial notice under I.R.E. 201(c), this error was harmless. Finally, we hold that Chaput failed to establish the possibility of a valid claim to justify the appointment of counsel. Accordingly, we affirm the district court's summary dismissal of Chaput's petition for post-conviction relief.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.

---

whether Chaput's waiver was voluntary, knowing and intelligent." *State v. Chaput*, Docket Nos. 46747 and 46826 (Ct. App. Dec. 17, 2019) (unpublished). In making this statement, however, the Court was specifically addressing Chaput's plea waiver and the district court's incorrect statement that he waived his right to appeal "*except as to the sentence imposed*." *Id.* In fact, Chaput's waiver included any right to appeal his sentence. The Court's statement about the voluntary nature of Chaput's appeal waiver was limited to addressing this specific issue and should not be construed as otherwise suggesting his guilty plea was not knowing, voluntary, and intelligent.